In the ESTATE OF Trudy MILLER, Deceased,

Michelle Helton, Personal Representative, Appellant–Respondent,

v.

Blaine Bailey, Respondent–Appellant.

Nos. 22801, 22828.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 28, 2000.

---

G. Brad Crowell, Stephen F. Gaunt & David L. Steelman, Rolla, for Appellant, Estate of Trudy Miller.

Tyce S. Smith, Sr., Colin P. Long, Waynesville, for Respondent, Blaine Bailey.

ROBERT S. BARNEY, Judge.

These consolidated appeals arise from an order entered on January 21, 1999, by the Honorable David Gregory Warren, special judge, (the "Warren Order"), in the Probate Division of the Circuit Court of Maries County (the "probate court"). The Warren Order set aside a "Judgment and Order" previously entered by the Honorable B.B. Turley, also a judge of the probate court, on September 28, 1998, (the "Turley Judgment").

In the probate court proceedings underlying both of the appeals before us, Michelle L. Helton, personal representative of the Estate of Trudy L. Miller, deceased, ("Appellant") filed a petition for discovery of assets and to set aside a joint survivorship deed to a farm, in which Blaine A. Bailey ("Respondent") was a named joint tenant. In the Turley Judgment, the probate court, *inter alia*, granted Appellant's amended petition to discover assets and accordingly set aside, vacated and annulled the joint survivorship deed under consideration. Respondent filed several post-hearing motions to set aside the Turley Judgment. *See infra*. Judge Warren granted one of Respondent's post-hearing motions and set aside and voided the Turley Judgment on the basis that Respondent had not been a "Party to the Lawsuit." [1] The Warren Order further recited that "[a]ll

other pending motions are herewith denied."

In Appeal No. 22801, Appellant now raises two points of trial court error. In her first point, she contends that the probate court erred in setting aside the Turley Judgment because Respondent was, indeed, a party to the probate proceedings in that he was specifically named in the pleadings at least six times; received notice of the nature and extent of the Appellant's interest in the property and was given ample opportunity to present his case. In her second point, she contends that the probate court erred in setting aside the Turley Judgment because Respondent had waived any defense of lack of personal jurisdiction by not making a timely motion claiming a lack of personal jurisdiction as provided by Rule 55.27. [2] We conclude that Appellant's first point, discussed *infra*, has merit. Accordingly, Appellant's second point is moot and will not be reviewed.

In Appeal No. 22828, Respondent also appeals from the Warren Order, positing probate court error in the denial of two of his other post-trial motions that sought to set aside the Turley Judgment. He first complains that the probate court erred as a matter of law in "failing to set aside the [Turley Judgment]" on the basis that under section 473.340.2 and Rules 44.01 and 55.25, he was entitled to a full 30 days to respond to Appellant's amended petition for discovery of assets/set aside deed. [3] He therefore maintains that the Turley Judgment was entered prematurely and should have been set aside on this ground, as well. Second, Respondent also asserts probate court error in not setting aside the Turley Judgment on the basis of his Rule 74.05 motion ("Entry of Default Judgment").

---

1. Judge Turley had earlier recused himself on October 13, 1998.

2. All rule references are to Missouri Court Rules (1998), unless otherwise designated. All statutory references are to RSMo 1994, unless otherwise set out.

3. In both his points, Respondent refers to the Turley Judgment as a "default" judgment, a misnomer that will be addressed *infra*.

He maintains that he filed this motion within a reasonable time; demonstrated good cause for not filing a responsive pleading because his attempts to obtain representation were futile; was incarcerated and "presented a meritorious defense that arguably could have defeated the Appellant's claims of lack of consideration and undue influence." We determine that Respondent's two points, discussed below, are not meritorious and are denied.

■ As a preliminary matter, we observe that Respondent has suggested in the jurisdictional statements of his briefs that this Court may lack jurisdiction to review these appeals because the Warren Order is not denominated a "judgment" as required under Rule 74.01. *See City of St. Louis v. Hughes*, 950 S.W.2d 850, 853 (Mo. banc 1997); *Chambers v. Easter Fence Co., Inc.*, 943 S.W.2d 863, 865 (Mo.App.1997).[4] "A reviewing court has a duty to determine its jurisdiction sua sponte." *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 3 (Mo. banc 1997).

This Court has previously observed that the "requirement of Rule 74.01(a) that a document from which an appeal is taken must be labeled 'judgment' does not apply to appeals from probate proceedings." *Estate of Brown*, 955 S.W.2d 940, 941 n. 4 (Mo.App.1997)(citing *In the Matter of Kemp v. Balboa*, 959 S.W.2d 116, 118 (Mo. App.1997)). We conclude that the Warren Order is a final order of the probate court and is appealable to this Court. *See* § 472.160.1(14); *Estate of Brown*, 955 S.W.2d 940, 941 (Mo.App.1997).

Before reviewing Appellant's first point in Appeal No. 22801, we must first examine the procedural history underlying these appeals. The record shows that on June 30, 1998, Appellant filed her initial petition to discover assets and to set aside a general warranty deed conveying certain tracts of real properties in Maries County, Missouri, to Trudy L. Miller and Respondent, as joint tenants with rights of survivorship. In these same pleadings Appellant also prayed that Respondent be "joined as a party hereto...." We further observe from the record that on this same date Appellant filed a "petition for temporary restraining order and injunction and permanent injunction to prevent waste"("injunctive relief"). Thereafter, a summons and copy of the foregoing pleadings was issued by the court on July 8, 1998; mailed to special process server, Rufus R. Harmon, for service; and subsequently served upon Respondent on July 15, 1998.[5] The record does not show that Respondent ever filed an answer to these initial pleadings.

On August 12, 1999, Appellant filed an amended petition for discovery of assets and to set aside a general warranty deed in two counts ("amended petition for discovery of assets"). In this petition, she reiterated her initial petition for discovery of assets; requested the court to set aside the aforementioned deed (Count I); and further requested that the court declare certain personal properties, primarily consisting of quarter horses, to be the property of the Estate of Trudy L. Miller (Count II). Appellant also prayed in each count that Respondent "be joined as a party hereto...." This amended petition for discovery of assets, together with amended pleadings seeking injunctive relief, was

4. Respondent has also stated that "[s]hould this court find that the Order appealed from is an appealable judgment then the Respondent would submit that the jurisdiction of this court is proper."

5. An "affidavit of service" by Rufus R. Harmon was filed with the court on August 31, 1998, showing service on Respondent on the "15 th of July, 1998." In a "notice" filed with the probate court, Respondent set out that the summons and petition were delivered to Fulton State Hospital at Fulton, Missouri, "on or about July 15, 1998...." Respondent was in confinement at that institution arising from first degree murder charges filed against him in connection with the death of Trudy L. Miller. In the "notice," Respondent informed the court and all parties that "he does not have the mental capacity to receive service, sue or be sued."

first served upon Respondent on August 19, 1998, by special process server, Rufus R. Harmon, who then filed his affidavit with the probate court on August 28, 1998. Again, the record does not show that Respondent filed any answer to these amended pleadings.

On August 28, 1998, the amended pleadings were again served upon Respondent by a Maries County Deputy Sheriff, shortly before the court conducted a hearing regarding the granting of a temporary restraining order pursuant to the amended petition for injunctive relief. Although Respondent was present during the course of the August 28, 1998, hearing, he was not represented by counsel. It is undisputed that the probate court never issued an order formally joining Respondent as a party in the discovery of assets litigation.

During the course of the August 28, 1998, hearing, Respondent acknowledged that he had received service of process on the amended petition for discovery of assets and injunctive relief. Judge Turley announced "what we're going to indicate on the record is that that (sic) service as being had upon you on the 28ᵗʰ day of August. Then by operation of the law, you have 30 days to file any response that you wish to file in that." Respondent stated, "[o]kay." Judge Turley then informed Respondent that he had an "opportunity now to—to obtain counsel on that."[6] Respondent filed no responsive pleadings prior to the September 28, 1998, hearing.

On September 28, 1998, the probate court conducted a hearing on the amended petition to discover assets. Respondent appeared *pro se* but was accompanied by the public defender, who was representing him in the criminal proceedings pending against him.[7] The probate court questioned Respondent as to his legal representation relating to the probate proceedings. Respondent stated that he had made several attempts to obtain an attorney to represent him but was unable to do so. The court denied Respondent's request for appointment of a civil attorney in the action.

## I.

■ Returning to Appellant's first point, we first note that "[t]rial courts are vested with broad discretion when acting on motions to vacate judgments." *Branson Hills Assoc. v. Millington*, 926 S.W.2d 178, 180 (Mo.App.1996). "Appellate courts will not interfere with those actions unless the record on appeal convincingly demonstrates a trial court's abuse of discretion." *Id.*

■ Secondly, we observe that Judge Warren set aside the Turley Judgment on the basis that Respondent had not been formally named as a "Party to the Lawsuit." In the Warren Order, Judge Warren cited to *State ex rel. Morris v. McDonald*, 817 S.W.2d 923 (Mo.App.1991), as authority for his determination. However, this foregoing case did not relate to probate proceedings. Instead, it was a civil action involving third-party practice requirements under Rule 52.11, arising from a cross claim against third-party defendants, where the third-party plaintiff failed

---

**6.** As best we can glean from our review of the transcript of the August 28, 1998, proceedings, the probate court does not indicate that it was aware of the August 19, 1998, service of the amended pleadings on Respondent. However, the probate court made the following remarks during the course of the September 28, 1998, hearing:

[Probate Court]: It's my recollection that on August 28ᵗʰ when we were here, that we provided and had [Respondent] served with a new amended petition; is that not correct?

[Appellant's attorney]: That is correct, Your Honor.

[Probate Court]: So that we know that he has at least one service, and possibly two services on that.

**7.** The public defender made it clear that she did not intend to participate in the hearing but was present only to inform the court that Respondent wished to assert certain state and federal constitutional rights against self-incrimination and other rights accorded him.

to obtain leave of court to join third-party defendants. While we recognize that section 473.340.2 (the discovery of assets statute) provides that "[s]ervice of summons, petition and answer thereto together with all subsequent proceedings shall be governed by the Missouri Rules of Civil Procedure," § 473.340.2, we are, nevertheless, persuaded that in the instant matter Respondent met the statutory requirements as a party because he was *initially* named as a party in both the first and amended pleadings for discovery of assets. "To be a party to a suit a person must either be named in the original pleadings, or be later added by appropriate trial court order." *Kelley v. Missouri Dept. of Revenue*, 827 S.W.2d 767, 768 (Mo.App.1992)(overruled on other grounds); *see Jines v. Director of Revenue*, 788 S.W.2d 801, 802 (Mo.App. 1990). Therefore, any request by Appellant to formally join Respondent as a party in the discovery of assets proceedings was mere surplusage. *See Kelley*, 827 S.W.2d at 768. In explanation, we observe that ordinarily the term "party," when applied to judicial proceedings, means one who is a party in a legal sense and is bound by the proceedings, or is an interested litigant, or a person whose name is designated on the record as plaintiff or defendant. *See Munson v. Director of Revenue*, 783 S.W.2d 912, 915 (Mo. banc 1990). Second, we note the general rules that "the strict rules of pleadings applied to circuit court petitions do not apply in probate proceedings." *In re Estate of Foster*, 878 S.W.2d 896, 897 (Mo.App.1994). "The issues in a discovery of assets proceeding are made up by the *pleadings* and the answers." *Id.* at 898. "A probate petition is sufficient if it gives reasonable notice of the nature and extent of the claim." *Id.* at 897; *see also Matter of Estate of Woodrum*, 859 S.W.2d 259, 261 (Mo.App.1993)(discussing the adequacy of pleadings in a probate proceeding brought pursuant to section 473.340); *Estate of McCormack v. McCormack*, 676 S.W.2d 928, 930 (Mo.App.1984).

█ Although not specifically named in the caption of the amended petition for discovery of assets, Respondent was, nevertheless, named at least a half dozen times in the body of the pleadings. "There is nothing in the discovery of assets statute that requires a specific caption in order to state a cause of action under § 473.340...." *In re Estate of Foster*, 878 S.W.2d at 898. Furthermore, the "character in which one is made a party to a suit, and the capacity in which a party sues or is sued, must be determined from the allegations of the pleadings, and not from its title alone." *In re Estate of Dawes*, 891 S.W.2d 510, 517 (Mo.App. 1994).[8] In light of our review of the foregoing cases, we conclude that Respondent was named as a party in both the original and amended petitions for discovery of assets, making it unnecessary for him to be formally *joined* as a party by the probate court. *See Kelley*, 827 S.W.2d at 768. In determining that Respondent had not been a party to the lawsuit, Judge Warren abused his discretion in setting aside the Turley Judgment. *See Branson Hills Assoc.*, 926 S.W.2d at 180. Point sustained.

## II.

We now turn our attention to Appeal No. 22828. In Point One, Respondent complains that he was not given 30 days to respond to the amended petition for discovery of assets which was served on him on August 28, 1998, and that Judge Warren erred in denying Respondent's posttrial motion to set aside the Turley Judgment for that reason. *See* Rule 55.25. In

---

**8.** We observe that while Judge Turley made no formal joinder of Respondent in the litigation, he addressed Respondent as one who is considered a party to a suit in both the August 28, 1998, hearing and the September 28, 1998, hearing. During the latter hearing Judge Turley determined that he had been served with at least two petitions for discovery of assets; asked Respondent if he were represented by counsel; determined that Respondent appeared *pro se;* allowed him to participate in the hearings; and gave Respondent opportunity to question all of the witnesses, as any party is normally entitled to do.

Point Two, he also complains that Judge Warren erred in denying Respondent's post-trial motion to set aside the Turley Judgment on the basis that Respondent had met all of the conditions required to set aside a default judgment under Rule 74.05. These points have no merit.

■■■ As to Point One, we initially observe that Respondent was served with the first amended petition for discovery of assets on August 19, 1998, more than 30 days before the September 28, 1998 hearing, thereby satisfying the 30 day time requirement imposed under Rule 55.25. We attach no significance to the fact that during the August 28, 1998, hearing Judge Turley gratuitously informed Respondent that he had 30 days to file his answer. Given the factual scenario as revealed in the record, it is reasonable to conclude that with the limited information available to him Judge Turley was attempting to explain in lay language a procedural process to a person whom the judge considered to be a *pro se* party. Furthermore, it is also reasonable to conclude that Judge Turley did not know that Respondent had been previously served with the same amended petition for discovery of assets on August 19, 1998. Had he known of this prior service on Respondent he would not have made his *sua sponte* remarks.[9] Our observations are bolstered by the fact that the affidavit of the process server showing service on August 19, 1998, was not filed until the date of the August 28, 1998, hearing. Furthermore, preliminary to the judge's re-

marks, Respondent had presented neither written nor oral motion to the probate court requesting the granting of an additional 30 days to file responsive pleadings. Also, prior to the entry of the Turley Judgment Respondent made no motion, challenge or objection premised on his right to file an answer to the amended discovery of assets petition. Respondent waived any procedural or due process right to contest his alleged inability to file responsive pleadings.[10] In like manner, Respondent's contention that he was improperly served on August 19, 1998, because the process server was not appointed by either the court or clerk, *see* § 506.140, is not meritorious. This is because Respondent posed no challenge or objection to the service of process on him prior to rendition of the Turley Judgment. *See Morrow v. Caloric Appliance Corp.*, 372 S.W.2d 41, 49 (Mo. banc 1963)(defects in amended return were waived by failure to challenge sufficiency of return until after trial, verdict and judgment). Lastly, as more fully set out *infra*, Respondent voluntarily appeared during both the August 28, 1998 hearing and the September 28, 1998 hearing, as well. Point denied.

■■■ Turning to Respondent's second point, Respondent contends that the Warren Court erred in not setting aside the Turley Judgment because he had met all of the conditions required preliminary to the setting aside of a default judgment as set out in Rule 74.05. We first observe

9. Respondent does not argue that Judge Turley's *sua sponte* remarks were enough to start the clock anew, so to speak. Nor does he cite to any case law supporting such a position.

10. It is noteworthy to observe that in *St. Louis County v. Police Officers Ass'n*, 652 S.W.2d 142 (Mo.App.1983), plaintiff posited trial court error because *defendants* failed to answer a count. The Eastern District of this Court observed that "[a]lthough the filing of an answer is mandatory, the opposing party waives the requirement unless it requests enforcement by timely and proper action." *Id.* at 145. In *Mahurin v. St. Luke's Hosp.*, 809 S.W.2d 418 (Mo.App.1991), the Western Dis-

trict of this Court observed that "[e]ven when an answer is required but not filed, if a cause is tried as if an answer had been filed, on appeal the matter is treated as if an answer traversing the allegations of the petition was filed." *Id.* at 421 "This is not to say that the filing of an answer is not required; it is to say that enforcement of the requirement of an answer is waived unless the opposing party invokes its enforcement by timely and proper action." *Id.*; *accord Estate of Schubert v. Holleman*, 683 S.W.2d 324, 325–26 (Mo.App. 1984); *Great Western Trading Co. v. Mercantile Trust Co. Nat. Assoc.*, 661 S.W.2d 40, 44 (Mo.App.1983).

that Rule 74.05 authorizes the entry of a "default judgment" against a party who has "failed to plead or otherwise defend." Rule 74.05(a). However, the factual scenario presented by the record precludes a finding that the Turley judgment was a "default judgment" as proposed by Respondent. Indeed, as previously noted, Respondent voluntarily appeared at both the August 28, 1998, and the September 28, 1998, hearings. During the latter hearing, Respondent, again, acknowledged that he had been served with "new papers" on August 28, 1998. He assumed the disposition of a litigant during the proceedings and gave every indication that he recognized the jurisdiction of the court. At one point he attempted to cross-examine witness Frank Reedy, a CPA, albeit inartfully. Although Respondent was accorded the opportunity to cross-examine at least six other witnesses, he declined to do so. Then during direct examination of the personal representative of the estate, he declared, "[y]ou lying bitch," whereupon, the trial court told Respondent that he would be given an opportunity to speak. To this, Respondent stated, "[o]kay." Later in the proceedings, Appellant's counsel declared that he had filed a motion to open a jointly rented safe deposit box. Whereupon, Respondent made a request to the trial court that "I'd like to have a copy of that last thing he just give (sic) you." Additionally, Respondent voluntarily declared to the court that "I'd like to see what [decedent] put in that box for me. I don't give a darn what these people say, there's something in that box for me." Furthermore, Respondent also declared that "I believe that [decedent] left me part of that farm. I really do .... There should be a copy of—— of what she willed me, a piece of that property." Finally, Respondent requested and was given the opportunity to make a statement. During the course of Respondent's statement he related various facts and figures tending to show that he had invested his assets in the farm in question, thereby countering evidence previously presented by Appellant tending to show that Respondent's name had been gratuitously placed on the deed in question. Respondent also remarked "they said I didn't invest anything in that place. They're wrong. I can prove that. Go to Phelps County Bank." Based on our review of the foregoing, we are persuaded that Respondent was quite willing to obtain the *favorable* ruling of the court and was accorded an opportunity to present his case. "When the litigant indicates his willingness to accept a favorable adjudication of his case and attempts to influence a tribunal to enter such a resolution, it seems appropriate to say he has entered his appearance before that tribunal." *Adamson v. Harris,* 726 S.W.2d 475, 478 (Mo.App.1987). "The general principle is that if a party takes any action which recognizes that the cause is in court and assumes an attitude that the jurisdiction of the court has been acquired, he is bound thereby and the action amounts to a general appearance." *State ex rel. Sperandio v. Clymer,* 581 S.W.2d 377, 384 (Mo. banc 1979). Although Respondent now maintains that he was incompetent and was unable to understand the proceedings during the course of both hearings, there is nothing in the record, except his own "notice" filed with the court, supporting this post-hearing assertion. Furthermore, it is unquestioned that Respondent was aware that certain papers had been filed relating to the deed in question, as early as the time he was served with the original petition for discovery of assets on or about July 15, 1998. He was again reminded by Judge Turley on August 28, 1998, that he had opportunity to obtain counsel. Although Respondent was at an obvious disadvantage by not being represented by counsel, "he is not entitled to any more indulgence than he would have received had he been represented by an attorney." *Crowe v. Clairday,* 935 S.W.2d 343, 347 (Mo.App.1996)(citing *Lamastus v. Lamastus,* 886 S.W.2d 721, 726 (Mo.App.1994)). "While this court recognizes the problems faced by pro se litigants, we cannot relax

our standards for nonlawyers." *Id.* "It is not for lack of sympathy but rather it is necessitated by the requirement of judicial impartiality, judicial economy and fairness to all parties." *Id.*

There has been no showing of abuse of discretion by the Warren Court in denying Respondent's Rule 74.05 motion. *See In re Marriage of Clark*, 813 S.W.2d 123, 125 (Mo.App.1991). Point denied.

In Appeal No. 22801, that portion of the Warren Order setting aside the Turley Judgment is reversed. The portions of the Warren Order appealed from by Respondent in Appeal No. 22828, are affirmed.

MONTGOMERY, P.J., concurs.

GARRISON, C.J., concurs.