Beverly Sue RYAN, P.A., Conservator
for the Estate of Ruth Spiegelhalter,
Respondent,

v.

William SPIEGELHALTER, et
al., Respondents, and Gary and
Teresa Gabel, Appellants.

No. SC 83805.

Supreme Court of Missouri,
En Banc.

Jan. 8, 2002.

Joseph Y. DeCuyper, Jr., Joseph Y. De-
Cuyper, Sr., Kansas City, for Appellants.

Steven M. Petry, Kansas City, Teresa M. Terry, Liberty, for Respondents.

William Spiegelhalter, Satellite Beach, FL, pro se.

John Spiegelhalter, Overland Park, KS, pro se.

Mary A. Wilson, Coronado, CA, pro se.

Albert Spiegelhalter, Kansas City, pro se.

Albert T. Spiegelhalter, Sr., Olathe, KS, pro se.

JOHN C. HOLSTEIN, Judge.

Gary and Teresa Gabel, the son-in-law and daughter of Ruth Spiegelhalter, appeal from a judgment in an action to discover assets, section 473.340,[1] awarding Mrs. Spiegelhalter's guardian and conservator a judgment of $36,382.53. In Count X of her petition,[2] the conservator alleged that the Gabels sold Mrs. Spiegelhalter a condominium in 1988, failed to deliver a deed to her, and then resold the condominium after Mrs. Spiegelhalter had paid them a substantial sum of money. Following opinion by the court of appeals, this Court granted transfer. *Mo. Const. art. V, sec. 10.* The judgment is affirmed.

*Facts*

Gary and Teresa Gabel were engaged in the construction and land development business in Clay County, Missouri. They did business as Gabel Construction Company or, as a joint venture, using the name Kingston Court Development Company. Their partner in the joint venture was Ronald Topham who, along with his wife, held legal title to the property known as Kingston Court Condominiums. It is undisputed that Gary and Teresa Gabel each had the power to enter into contracts to sell property on behalf of the artificial entities.

In 1988, the Gabels sold Mrs. Spiegelhalter a condominium in the Kingston Court project. Mrs. Spiegelhalter paid $49,000 as a down payment and, between January of 1989 and at least March of 1996, routinely made monthly payments of $235 to the Gabels.[3] The contract offered into evidence by the conservator at trial, and the one apparently relied on by the trial judge, was a document dated December 3, 1988.[4] It is styled a "contract for the sale of real estate." It provides for a $49,000 down payment and for either an additional $11,000 cash or financing of the $11,000 at ten percent interest in installments over fifteen years. From this docu-

1. All references are to RSMo 2000, unless otherwise specified.

2. In other counts, the conservator alleged that certain personal property of the estate was in the possession of some of Ruth Spiegelhalter's other children. No relief was granted on those counts and they are not the subject of this appeal.

3. According to Gary Gabel, Mrs. Spiegelhalter missed some payments.

4. There were in fact three contracts signed by Mrs. Spiegelhalter, one executed before and one after the contract relied on by the trial judge. The prior contract was dated January 15, 1988; though the conservator pled the existence of this contract, all parties seemed to agree that the first contract was abandoned because Mrs. Spiegelhalter was unable to obtain financing. The last contract, dated December 20, 1988, was called a "Contract for Deed" but was not offered at trial. It only found its way into the record because it was identified by Gary Gabel at a pretrial hearing in support of the Gabel's motion to dismiss. It provided for $49,000 down and $235 monthly payments on $18,000 financed by the Gabels. It also provided that the Gabels would "carry an additional second mortgage in the amount of $11,000." The conservator never pled the December 20 contract and it was not asserted as a defense in the Gabel's answer.

ment, it is impossible to tell whether the parties intended an outright sale or a contract for deed. At the hearing on his motion to dismiss, Mr. Gabel characterized the arrangement as "owner financing."

In early 1996, some of Mrs. Spiegelhalter's other children discovered that the Gabels had never transferred legal title to the condominium to Mrs. Spiegelhalter. In addition, they found that the Gabels had, since the transaction with Mrs. Spiegelhalter, placed a $35,000 mortgage on the property. In an apparent effort to protect his mother's interest in the property, a son, John Spiegelhalter, purchased the property from the Gabels in April of 1996 for $85,000, which included payment of the $35,000 indebtedness. In order to raise the $35,000 needed to pay the Gabels' debt on the property, John Spiegelhalter took out a second deed of trust on his own home. The remaining $50,000 was unpaid until February 27, 1998, when John Spiegelhalter sold the property for $101,000. The net proceeds from the sale amounted to $91,702.53. John Spiegelhalter paid the Conservator $55,320 and reimbursed himself for the Gabels' $35,000 mortgage he had paid in 1996 and other expenses. Ruth lived in the condominium from December of 1988 until she was unable to care for herself in late 1997.

In December of 1997, a petition for guardianship was filed and an emergency order entered appointing John Spiegelhalter as his mother's guardian *ad litem.* The sale had yet to formally close when Mrs. Spiegelhalter was declared legally disabled and incapacitated on February 6, 1998. The public administrator of Clay County was appointed her guardian and conservator. The present action was filed December 11, 1998. After trial, the probate division of the circuit court reached the $36,382.53 judgment against the Gabels by subtracting the $55,320 paid to the

estate by John Spiegelhalter from the $91,702.53 net sale proceeds. Essentially, the probate division found that the Gabels owe the estate money that was paid on their debt in 1996, because title should have been in the hands of Mrs. Spiegelhalter at the time the debt was paid.

The standard of review is clear. "The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

### Probate Jurisdiction

■ The Gabels challenge the jurisdiction of the probate division of the circuit court to hear this action; they claim that the discovery of assets mechanism in this case disguises what is actually a breach of contract or fraud claim that does not belong in the probate division.

■ The probate division of the circuit court has original and exclusive jurisdiction over a proceeding to discover assets pursuant to section 473.340. *Estate of Williams v. Williams,* 12 S.W.3d 302, 305 (Mo. banc 2000). In a discovery of assets proceeding, the court's role is to determine whether specific property has been adversely withheld or claimed. *Sec. 473.340.1.* "The statute is not intended as a device to test general fiduciary conduct, improper administration of the estate, or general disputes [among] heirs." *In re Goldenberg's Estate,* 601 S.W.2d 637, 639 (Mo.App.1980). "A discovery of assets action, as its name implies, is a search for assets." *State ex rel. Knight v. Harman,* 961 S.W.2d 951, 954 (Mo.App.1998).

■ A proceeding under section 473.340 is similar to common law actions of

trover or conversion. *Harman*, 961 S.W.2d at 954; *Estate of Goslee*, 807 S.W.2d 552, 554 (Mo.App.1991). Modern amendments to the probate code, however, have expanded the jurisdiction of the probate division so that today a discovery of assets proceeding extends to all species of property, including real estate. *Estate of Goslee*, 807 S.W.2d at 554. Moreover, the probate division in such a proceeding is now afforded inherent power of the circuit court to adjust equities between the parties without rigid adherence to any form and may shape the remedy to meet the demands of justice. *Id.; Estate of Cantonia v. Sindel*, 684 S.W.2d 592, 595 (Mo. App.1985); *sec.* 472.030. By virtue of its equitable jurisdiction, the probate division is not limited to questions of legal title, but it may determine both legal and equitable claims of an estate to title in an asset. In this case, the estate's claim is based on Mrs. Spiegelhalter's equitable ownership interest in the condominium.

Here there is clearly an asset at issue that the conservator claims is or should be part of the estate—the condominium. The condominium is "claimed to be an asset of [the] estate or ... should be an asset of [the] estate ...." *Sec. 473.340.1.* Normally, the court would, upon finding an asset was properly a part of the estate, direct the delivery or transfer of the title or possession of the *property* "to the person entitled thereto." *Sec. 473.340.3.* In this case, however, the Gabels have sold the property at issue. "If the party found to have adversely withheld the title .... of said property has transferred or otherwise disposed of the same, the court shall render a money judgment for the value thereof with interest from the date the property ... was adversely withheld." *Id.*

Courts of this state have sometimes reached the conclusion that certain claims ostensibly brought under section 473.340 do not in actuality fall under the probate division's jurisdiction. Generally, this is found to be the case when conservators have failed to allege that any *specific* assets were wrongfully withheld or transferred. For example, in the companion cases of *State ex rel. Abele v. Harman*, 962 S.W.2d 945 (Mo.App.1998) and *State ex rel. Knight v. Harman*, 961 S.W.2d 951 (Mo. App.1998), the conservator claimed that the disabled child's father and a law firm mishandled the child's personal injury action by agreeing to settle claims for less than their value. The claims were breach of fiduciary duty and legal malpractice. The court of appeals held that the claims were not for the discovery of any specific "piece of property," as is required by the statute, but were instead clearly tort claims. *State ex rel. Knight*, at 954. *See also Ryan ex rel. Estate of Reece v. Reece*, 31 S.W.3d 82 (Mo.App.2000). Similarly, in *Matter of Estate of Woodrum*, 859 S.W.2d 259 (Mo.App.1993), the conservator sought an adjudication that a surety company was liable on a bond due to the misfeasance of a prior conservator. Again, it was held that an action to recover on a surety bond is not an action for the recovery of any specific asset; that it is purely a contract action. *Id.* at 262. In the present case, of course, a specific asset—the condominium—is claimed to rightly be part of the estate. The probate division had jurisdiction.

### Substantial Evidence

■ The Gabels' next claim is that the court's judgment was not supported by substantial and competent evidence, because neither they nor Mrs. Spiegelhalter had an interest in the property when Mrs. Spiegelhalter was adjudicated as incapacitated. The argument seizes on language found in *State ex rel. Knight v. Harman*, that the purpose of a discovery of assets proceeding is to determine whether "the

decedent [or incapacitated person] held *title at the time of his death [or incapacitation]* to certain described property . . . ." 961 S.W.2d at 954 (emph. added). The argument is flawed for at least two reasons.

First, contrary to the Gabels' assertions, Mrs. Spiegelhalter had an equitable interest in the real estate when she was declared incapacitated on February 6, 1998. The December 3 contract is a form contract for sale that the parties modified.[5] Due to the modifications it is internally inconsistent. Certain language relating to the delivery of a note and deed of trust is struck, though in other places similar language is retained. It states that a "closing" shall be held on December 3, the day Mrs. Spiegelhalter took possession of the property. But no closing, in the typical sense, took place or apparently was intended. The only act of "closing" contemplated in the agreement was that "[p]ossession shall be delivered to the Buyer at the time of closing or within 30 days thereafter."

Suffice it to stay that even though the December 3 contract is called a contract for sale, there was no conventional sale transaction contemplated in this case. The Gabels never delivered a warranty deed to Mrs. Spiegelhalter, despite accepting payments from her beginning on January 1, 1989. Mrs. Spiegelhalter, though she took possession of the property on December 3, 1988, and commenced making payments, never delivered a note and deed of trust to the Gabels, a promise that is suggested in the December 3 contract, and an act that would be expected in a typical sale transaction. Though the December 3 contract is called a contract for sale, the alterations made to the contract form and the conduct of the parties indi-

cate that it was really a contract for deed, or a kind of installment land contract. This conclusion is reinforced by the fact that a document titled "Contract for Deed" was signed by the parties a few days later.

"Generally, a contract for deed, also referred to as an installment land sale contract, is used as a substitute or alternative to a mortgage or deed of trust. Under a contract for deed, the buyer of real estate makes a down payment and agrees to make remaining payments at a specified rate of interest in installments to the seller. The buyer normally takes possession of the property at the time the contract for deed is made. The seller agrees to convey the property to the buyer by delivering a warranty deed upon completion of the installment payments . . . ."

*Long v. Smith,* 776 S.W.2d 409, 413 (Mo. App.1989). Consistent with the characterization of Gary Gabel, the contract for deed is a form of owner financing. The seller remains the record owner and the buyer under such contract does not receive legal title to the property until the installment payments are completed. *Id.* Prior to the end of the installment payments, the buyer has an equitable ownership interest. *Id.*

The Gabels' conveyance to John Spiegelhalter in 1996, assuming it was duly recorded, and assuming the unlikely possibility that John had no actual knowledge of his mother's equitable interest, may have given John's interest priority over Mrs. Spiegelhalter's interest. *Sec. 442.400; Hays v. Pumphrey,* 226 Mo. 119, 125 S.W. 1109 (1910). That conveyance by the Gabels did not wholly extinguish the equitable ownership interest of Mrs. Spiegelhal-

---

**5.** The form contract appears to be one promulgated by the Missouri Association of Real-

tors.

ter arising out of the December 3, 1988 contract.

Second, numerous cases may be found where legal title was transferred prior to death or incapacitation, and yet still the estate was permitted to pursue a discovery of assets suit to recover the asset in which the estate claimed an interest under equitable principles. *See Estate of Miller*, 9 S.W.3d 760 (Mo.App.2000)(discovery of assets action to set aside deed executed before decedent's death); *Estate of Gross v. Gross*, 840 S.W.2d 253 (Mo.App.1992)(discovery of assets used to set aside pre-death deed of decedent for undue influence); *Estate of Goslee*, 807 S.W.2d 552 (Mo.App.1991)(permitting estate to bring discovery of assets to set aside a deed by decedent in fraud of creditors); *Estate of Lloyd*, 676 S.W.2d 889 (Mo.App.1984)(discovery of assets suit permitted to recover pre-death conveyance in fraud of marital rights). There was substantial evidence that Mrs. Spiegelhalter had an equitable title in the property at the time she was declared incapacitated in 1998.

■ Though not preserved in their point relied on, the Gabels also argue that after the 1998 sale, John Spiegelhalter reimbursed Mrs. Spiegelhalter's estate "the entire deposit she paid in 1988, $49,000, plus an additional $4,420." They argue that this amount fully compensated the estate. The Gabels state that they had "no ownership interest whatsoever" in the property after April of 1996 when the condominium was purchased by John Spiegelhalter. The Gabels do not account for the undisputed fact, however, that out of the $91,822.54 net proceeds from the sale of the property, John Spiegelhalter paid a $35,000 mortgage that could be traced to indebtedness the Gabels had placed on the property. The Gabels presented no evidence to the contrary, and in fact presented no evidence or witnesses of their own at

trial. The trial judge was permitted to adjust the equities between the parties.

The judgment awarded by the trial court represents the difference in the amount paid to Mrs. Spiegelhalter following the sale of the property in 1998 and what she, as equitable owner of the property, would have received from a sale had the property not been transferred by the Gabels, who held bare legal title to the property at the time they encumbered the property for $35,000 and when they transferred title to property in 1996. There is substantial evidence of the damages assessed.

*Sufficiency of the Pleadings*

■ Although not a separate point, the Gabels pepper their brief with complaints that the conservator's pleadings were insufficient because she failed to allege that the Gabels adversely withheld property from Mrs. Spiegelhalter's estate, and that she did not set forth whether she was asserting a claim for breach of contract or fraud.

■ In a discovery of assets claim, the petition shall describe the property, if known, and shall allege the nature of the interest of the petitioner; it shall also allege that title or possession of the property, or both, are adversely withheld or claimed. *Sec. 473.340.1.* However, "the strict rules of pleadings in circuit court petitions do not apply to probate proceedings." *In re Miller*, 9 S.W.3d at 765. Instead, the pleadings must simply "give reasonable notice of the nature and extent of the claim." *Woodrum*, 859 S.W.2d at 261; *see also In re Foster*, 878 S.W.2d 896, 897 (Mo.App.1994).

The petition alleged that the Gabels purported to sell the condominium to Ruth Spiegelhalter. It is alleged that she paid them $49,000 and they agreed to carry an $11,000 balance. The contracts of January

15, 1988, and December 3, 1988 were incorporated in the pleading by reference. The petition further states that the title was not transferred to Mrs. Spiegelhalter. The pleading also alleges the 1996 sale by the Gabels. The pleading is certainly no model—there are other vague allegations, ones that may be considered allegations of fraud or other tort, or a claim for money damages for breach of contract. But given the lack of formality accorded pleadings in probate matters, it was sufficient to put the Gabels on notice that the estate claimed an interest in the condominium. In any event, the claim that the petition is insufficient is not preserved.

### The Statute of Limitations

■ The defense of statute of limitations is an affirmative defense that generally must be pled with reasonable factual specificity in an ordinary civil case. *Rule 55.08*. This, however, is a proceeding to discover assets in the probate division of the circuit court pursuant to section 473.340. That section provides: "Service of summons, petition and answer thereto together with all subsequent proceedings shall be governed by the Missouri Rules of Civil Procedure." *Sec. 473.340.2*. Those rules in turn provide that absent an order by the judge of the probate division, only Rules 41, 54.18, 55.03, 56, 57, 58, 59, 60, 61, and 62 apply to proceedings of the probate division of the circuit court. *Rule 41.01(a)*.

Here, there was no such order by the judge. Even assuming the statute is in conflict with the rule, section 473.340.2 is not "a law limited to the purpose" of annulling the procedural rule, and thus Rule 41.01(a) controls. *Mo. Const. art. V., sec. 5*. The provisions of Rule 55.08 relating to the specificity of pleading an affirmative defense such as the statute of limitations did not apply.

■ The Gabels contend that the conservator's action is barred by either the five year statute of limitation provision found at section 516.120 (action for breach of contract), or the ten year limitation of section 516.110 (action upon a writing). It is also fairly arguable that because this is a suit to recover real property, the ten year statute of limitations of section 516.010 applies. Under the evidence in this case, it is questionable exactly when either the five or ten year statutes commenced running. A statute of limitations is triggered not by discovery of damage, but by the commencement of the right to sue. *Business Men's Assur. Co. of America v. Graham*, 984 S.W.2d 501, 507 (Mo. banc 1999). The Gabels' argument is that the statute began to run on December 3, 1988, when the Gabels failed to deliver a deed to Mrs. Spiegelhalter pursuant to the terms of the contract, and that the statute of limitations had expired when suit was filed on December 11, 1998.

■ Here, Mrs. Spiegelhalter's right to sue commenced when she had a right to specifically enforce the contract and compel delivery of a deed from the Gabels or when the contract was breached, whichever occurred first. The right to demand delivery of a deed accrued no earlier than when she made the last payment due under the contract. Only then was she entitled to sue for her deed. If, as Gary Gabel testified at the hearing on his motion to dismiss, some payments were only partial payments, all payments were not timely made, and that some payments were applied to taxes, her right to sue accrued well after December of 1993. Assuming, as the Gabels seemed to argue at trial, that Mrs. Spiegelhalter never fully paid off the installment contract within the fifteen years allowed by the contract, the Gabels committed a breach of the contract when they gave a deed to John Spiegelhalter in

1996, thus putting it beyond their ability to deliver clear title. So either the failure to deliver a deed when the $11,000 debt was paid, which was most likely after December of 1993, or as late as the transfer of the property in 1996 triggered the running of the statute of limitations. The Gabels bear the burden of proving that the action was not timely filed on December 11, 1998. *Modine Mfg. Co. v. Carlock*, 510 S.W.2d 462, 467 (Mo.1974). The trial court did not err in finding against the Gabels, who had the burden of establishing that the action was barred.

*Conclusion*

The judgment of the trial court is affirmed.

All concur.