In the ESTATE OF George MACORMIC, Deceased State of Missouri, Department of Social Services, Division of Medical Services, Appellant,

v.

Cecilia Stogsdill, et al., Respondents.

No. 28528.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 31, 2008.

Jeremiah W. (Jay) Nixon, Atty. Gen. & Paul Harper, Asst. Atty. Gen., Jefferson City, for Appellant.

Gwen Froeschner Hart, Shurtleff, Froeschner & Bunn, L.L.C., Columbia, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

The State of Missouri, Department of Social Services, Division of Medical Services ("the State") appeals two orders of the probate division ("the probate court"), one of which dismissed its petitions for discovery of assets and accounting and the other which discharged the personal representatives and closed the estate of George Macormic ("Decedent"). The State alleges four points of probate court error.

The record reveals Decedent died on April 11, 2005. Prior to this time he had been receiving public assistance benefits through the Medicaid program. Decedent's Will provided that the entirety of his estate be devised to "the George S. Macormic Revocable Trust" ("the Trust"). The Trust named as trustees Decedent's children, Lance Macormic ("Mr. Macormic") and Cecilia Stogsdill ("Ms. Stogsdill").

On December 2, 2005, the State filed its "Application of Interested Party for Order to Require Supervised Administration" of Decedent's estate pursuant to section 473.020.[1] The petition stated, *inter alia,*

> The general nature and approximate value of the [D]ecedent's estate so far as is known to the [State] is as follows:
>
> A. Personal Property: Certificates of Deposit and other personal property [t]ransferred into a trust triggering the application of [section] 461.300[.] [2]
>
> B. Real Property: Real property located at 214 S. Patton, Newburg, Missouri, 65550–9135, Value $44,400.00 or more.

The State also claimed in its petition that under section 473.398 it "has the right to recover its public assistance expenditures from the above estate" and it "is interested in said estate as a creditor of [Decedent]." [3]

Then, on December 13, 2005, Mr. Macormic and Ms. Stogsdill filed a "Petition for Probate of Will and for Letters Testamentary" in which they asserted they were designated as personal representatives in Decedent's Will; there was no real or personal property in Decedent's estate; and "[t]o the best of [their] knowledge there is no property subject to administration."

On January 13, 2006, the probate court entered an order admitting the Will to probate; granting letters testamentary; appointing as personal representatives of Decedent's estate Mr. Macormic and Ms. Stogsdill ("Personal Representatives"); and ordering "[t]he estate will be a supervised administration."

On February 8, 2006, the State sent a demand pursuant to section 461.300.2 to Personal Representatives for an "accounting against the beneficiaries of recoverable transfer executed by [Decedent]."

On March 13, 2006, Personal Representatives filed an inventory of the estate which recited the sole asset of the estate was $6,384.62 from the sale of Decedent's personal property at auction.

On April 24, 2006, the State filed a petition against Ms. Stogsdill for discovery of assets per section 473.340 and a petition for accounting per section 461.300. Ms. Stogsdill then filed a motion to dismiss the State's petition for failure to name Mr. Macormic as a party to the petition. The State thereafter filed amended petitions for discovery of assets and accounting.[4]

---

1. All references to section 461.300 are to RSMo Cum.Supp.2005. All other statutory references are to RSMo 2000.

2. Section 461.300 implicates, *inter alia,* statutory sections relating to the rights of creditors under the nonprobate transfer law.

3. In an affidavit attached to its petition, the State asserted Decedent's estate owed the State "the amount of ... $63,398.73 ... for Public Assistance benefits paid by the Department of Social Services or its division."

4. In addition to Personal Representatives, the petition was filed against James A. Macormic; George R. Macormic; Teresa Demis; and Margaret L. Stites all of whom are heirs of Decedent. Further, Personal Representatives were sued in both their official and individual capacities. All of the aforementioned will be referred to herein as "Respondents," although only Ms. Stogsdill filed a brief in this matter.

In its amended petition for discovery of assets the State asserted it was a creditor of the estate and all assets disposed of by the Trust should be assets of the estate. The State maintained that the Personal Representatives "are unlawfully withholding property that they should rightfully pay and/or transfer to the estate," and pointed to a provision in the Trust relating to the payment of "Debts and Expenses." [5] The petition also noted that "an auction to sell assets belonging to [Decedent]" had been held on October 1, 2005, and "[i]t is believed that one or more of the [beneficiaries] received money and/or property as a result of the auction." The State's petition for accounting requested the probate court enter a judgment against the beneficiaries who received property of the Trust to the extent necessary to recover the amounts owed to the State.

■ Personal Representatives then filed separate answers to the State's amended petition; [6] however, both their answers included the same general allegations and defenses. Personal Representatives asserted in their answers and in this appeal that the State failed in its petitions to state a claim upon which relief can be granted in that the State is not a beneficiary of the Trust and "was not an ascertainable credi-

tor during [Decedent's] life...." Accordingly, they asserted "any interest [the State] claim[s] in the res of the [T]rust fails because it did not vest prior to [Decedent's] death," and the State cannot enforce the terms of the Trust. Therefore, Personal Representatives maintained the State lacked standing to bring an action against the Trust and they requested the probate court dismiss the State's petitions for discovery of assets and accounting.[7]

On October 19, 2006, the State filed a response to Personal Representatives' motion to dismiss. On April 27, 2007, the probate court entered an order granting Personal Representatives' motion to dismiss the State's petition for discovery of assets and petition for accounting because the State "has no standing to file their Amended Petition against Respondents." Thereafter, on April 27, 2007, the probate court entered an Order of Discharge in which it found there were "[n]o assets to distribute" and discharged Personal Representatives. This appeal by the State followed.

■ In its first point of probate court error the State maintains the probate court erred in dismissing its petition for discovery of assets [8] based on lack of

---

5. Article II of the Trust, entitled "Debts and Expenses," provides: "I direct that all my legally enforceable debts and funeral and testamentary expenses be fully paid from my estate as soon after my death as can properly be done."

6. The other Respondents in this matter did not file responsive pleadings although they were parties to these proceedings.

7. As a general rule " '[s]tanding to sue evaluates the sufficiency of a plaintiff's interest in the subject of the lawsuit. It is a concept used to ascertain if a party is sufficiently affected by the conduct complained of in the suit, so as to insure that a justiciable controversy is before the court....' " City of Wellston v. SBC Communications, Inc., 203

S.W.3d 189, 193 (Mo. banc 2006) (quoting 15 Mo. Prac. Civil Rules of Practice sec. 52.01–2); see Kemp v. Balboa, 959 S.W.2d 116, 118 (Mo.App.1997).

8. "In a discovery of assets proceeding, the court's role is to determine whether specific property has been adversely withheld or claimed." Ryan v. Spiegelhalter, 64 S.W.3d 302, 305 (Mo. banc 2002). " 'The statute is not intended as a device to test general fiduciary conduct, improper administration of the estate, or general disputes among heirs.' " Id. (quoting In re Goldenberg's Estate, 601 S.W.2d 637, 639 (Mo.App.1980)). " 'A discovery of assets action, as its name implies, is a search for assets.' " Ryan, 64 S.W.3d at 305 (quoting State ex rel. Knight v. Harman, 961 S.W.2d 951, 954 (Mo.App.1998)).

standing because section 473.340 provides "that any 'creditor, beneficiary or other person who claims an interest in property which is claimed to be an asset of an estate or which is claimed should be an asset of an estate' has standing to file a petition for discovery of assets...." The State asserts it "is a creditor of [Decedent] and a person who claims an interest in property which is claimed should be an asset of the estate by virtue of the State's asserted claim for Medicaid benefits paid during the life of [Decedent]."

Accordingly, the issue here is whether the State had standing to file its petition for discovery of assets against the personal representatives and heirs of Decedent's estate such that the probate court should not have dismissed its petition. The issue is *not* the substantive merits of the State's claim against Decedent's estate as argued by Respondents.

■ Quoting from *State ex rel. Nixon v. Hutcherson,* 96 S.W.3d 81, 83 (Mo. banc 2003), Respondents focus a great deal of their argument on the fact that " '[i]n the case of a private trust no one except a beneficiary or one suing on his behalf can maintain suit to enforce their trust.' " We agree with that statement of law; however, in the present matter the State *did not file suit against the Trust* or even against the trustees of the Trust. The State filed suit against Personal Representatives and Decedent's heirs.[9] With that being said, it is clear and Respondents concede, that "[i]t is established law in Missouri that the State may recover for Medicaid payments

from [a decedent's] probate estate." Section 473.398.1 states in pertinent part:

[u]pon the death of a person, who has been a participant of aid, assistance, care, services, or who has had moneys expended on his behalf by the department of health and senior services, department of social services, or the department of mental health, or by a county commission, the total amount paid to the decedent or expended upon his behalf ... *shall be a debt due the state or county, as the case may be, from the estate of the decedent.* The debt shall be collected as provided by the probate code of Missouri....

(Emphasis added); *see Matter of the Estate of Thomas,* 743 S.W.2d 74, 77 (Mo. banc 1988).

■ Section 472.010(3) defines *claims* as "liabilities of the decedent which survive whether arising in contract, tort or otherwise, funeral expenses, the expense of a tombstone, and costs and expenses of administration." Additionally, we observe that section 473.020 "makes no provision for determining whether the estate of a decedent has property before opening an estate in probate court and appointing an administrator where an interested party as defined by sections 472.010(15) [10] and 473.020.1 files application and satisfies the filing requirements of section 473.020." *Missouri Dept. of Soc. Servs. v. Roper,* 174 S.W.3d 563, 568 (Mo.App.2005). Further, "[d]etermination of the estate assets is made as provided by law after the estate has been opened." *Id.* "In addition, an estate can be opened at a creditor's re-

---

9. We note this issue is confusing in that Respondents are both the personal representatives and heirs of Decedent's estate as well as Trustees and beneficiaries of the Trust; however, the petition filed by the State specifically sued them in their capacities as personal representatives and heirs of the estate and not in relation to their roles with the Trust.

10. Section 472.010(15) defines "interested persons" as "heirs devisees, spouses, creditors or any others having a property right or claim against the estate of a decedent being administered.... This meaning may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved."

quest even where the estate has no assets." *Missouri Dept. of Soc. Servs. v. Kramer*, 215 S.W.3d 739, 741–42 (Mo.App. 2007).

In order to recover debts owed from an estate, a party may file a petition for discovery of assets with the probate court per section 473.340.1. Section 473.340.1 states in pertinent part:

> *[a]ny ... person who claims an interest in property* which is claimed to be an asset of an estate or which is claimed should be an asset of an estate may file a verified petition in the probate division of the circuit court in which said estate is pending seeking determination of the title, or right of possession thereto, or both. The petition shall describe the property, if known, shall allege the nature of the interest of the petitioner and that title or possession of the property, or both, are being adversely withheld or claimed.

Section 473.398.1 gives the State the right to petition for the debt it is owed *"from the estate of the decedent."* Under section 473.398.1, then, the State has an interest in *any property* which could possibly be part of Decedent's estate, thereby giving it standing to maintain its action herein. *See Kemp*, 959 S.W.2d at 118.

In its petition for discovery of assets the State described the real and personal property it believed was a part of the estate. Additionally, the State filed an affidavit detailing the debt or claim owed to it for Decedent's Medicaid benefits, and

requested the probate court order a discovery of assets. By granting Respondents' motion to dismiss without permitting the State to maintain its discovery of assets proceedings the probate court erred.[11] Point One has merit.

■ In its second point the State maintains the probate court erred in dismissing its petition for accounting for lack of standing because the State has standing under section 461.300, which "provides that 'any person to whom [Decedent] is liable, which liability survives whether arising in contract, tort, or otherwise'" has standing to sue. The State argues it "is a person to whom [Decedent] is liable for Medicaid benefits paid during the life of [Decedent], which liability survives, having arisen by statute."

■ "The Probate Code requires a res for probate court jurisdiction." *In re Estate of Fischer*, 901 S.W.2d 239, 240 (Mo.App.1995). "However, assets which may pour into an estate have been held sufficient to satisfy this res requirement." *Id.* Furthermore, an "estate's potential claim to funds from nonprobate transfers in order to satisfy creditors is an adequate res." *Id.*

Section 461.300 sets out, in part pertinent to our discussion, that:

> 1. Each recipient of a recoverable transfer[12] of a decedent's property shall be liable to account for a pro rata share of the value of all such property received, to the extent necessary to discharge the ... claims remaining unpaid

---

11. In making this decision we make no determination relating to whether there were, in fact, any assets in the estate. Such a determination is a matter for the probate court to determine. *See State ex rel. Knight v. Harman*, 961 S.W.2d 951, 955 (Mo.App.1998).

12. A "[r]ecoverable transfer" is defined in section 461.300.10(4) as

a nonprobate transfer of a decedent's property under sections 461.003 to 461.081 and any other transfer of a decedent's property other than from the administration of the decedent's probate estate that was subject to satisfaction of the decedent's debts immediately prior to the decedent's death, but only to the extent of the decedent's contribution to the value of such property.

after application of the decedent's estate. . . .

2. The obligation of a recipient of a recoverable transfer may be enforced by *an action for accounting* commenced within eighteen months following the decedent's death by the decedent's personal representative *or a qualified claimant* . . . .

(Emphasis added). Section 461.300.10(1) defines a "[q]ualified claimant" as "*a creditor*, surviving spouse, dependent child, or a person acting for a dependent child of the decedent. . . ." (Emphasis added). Section 461.300.10(1) also defines a "[c]reditor" as "any person to whom the decedent is liable, which liability survives whether arising in contract, tort, or otherwise. . . ."

As set out in our discussion in Point One, under section 473.398.1 a decedent who accepts Medicaid benefits from the State owes a *debt* to the State for "the total amount paid to the decedent or expended upon his behalf. . . ." Such a debt necessarily survives the death of Decedent in that section 473.398 specifically states it can be collected from the estate of Decedent.[13] Being a creditor under section 461.300.10(1) the State is entitled to file a petition for accounting. Accordingly, the probate court erred in granting Respondents' motion to dismiss the State's petition for accounting based on its ruling that the State has no standing.[14] Point Two has merit.

In its third point of probate court error the State maintains the probate court erred in discharging Personal Representatives "with a finding that the estate had no assets because the evidence before it showed that the estate did have assets in that the unsigned inventory filed by [Personal Representatives] stated that the estate had $6,384.62 in assets." In its fourth point relied on the State asserts the probate court erred in discharging Personal Representatives and closing the estate "because closure was precluded by [section] 473.543 . . . which bars closure before the personal representative accounts for all assets received and disbursed" and Personal Representatives "never filed the accounting for assets received and disbursed."

Having found the probate court erred in granting Respondents' motion to dismiss, we need not specifically address the State's remaining points relating to the discharge of Personal Representatives and the closure of the estate. Accordingly, the Order discharging Personal Representatives and closing the estate is reversed and

---

13. The following cases from other jurisdictions, based on similar statutes, are instructive: *Estate of Wood v. Arkansas Dept. of Human Services*, 319 Ark. 697, 894 S.W.2d 573, 574 (Ar.1995) (holding that under A.C.A. section 20–75–436 a debt is created in favor of the State upon the death of the Medicaid recipient and this debt may be asserted as a claim against the decedent's estate); *In the Matter of the Estate of Burns*, 131 Wash.2d 104, 928 P.2d 1094, 1098 (1997) (holding that "although recipients pay off their debts to the State only upon their deaths, the purpose of the challenged provisions is to regulate the collection of debts owed by Medicaid recipients, not the disposition of their estates"); *In the Matter of the Estate of Hooey*, 521 N.W.2d 85, 87 (N.D.1994) (holding that "[i]t is not

significant whether the obligation to repay medical assistance is regarded as a statutory creation, or as being quasi-contractual in nature. In either regard, the obligation to repay, if any, arises upon receipt of the benefits, i.e., prior to the decedent's death" (internal citations omitted)).

14. In making this decision we make no determination relating to whether there were, in fact, any assets in the estate which would be revealed by a motion for accounting. Such a determination is a matter for the probate court to determine based on the pleadings of the parties. *See State ex rel. Knight*, 961 S.W.2d at 955.

remanded to the probate court for further proceedings consistent with this opinion.

LYNCH, C.J., and RAHMEYER, J.