**In the ESTATE OF Robert Charles BOATRIGHT, Deceased.**

**Delores Irene Boatright, as Per. Rep., and individually, Respondent,**

v.

**Michael E. BOATRIGHT, Appellant.**

**No. 24378.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 17, 2002.

Motion for Rehearing or Transfer Denied Oct. 10, 2002.

Robert W. Richart, Tomie K. Parsons, Joplin, for appellant.

W. Henry Johnson, Sims, Johnson, Wood & Farber, Neosho, for respondent.

ROBERT S. BARNEY, Judge.

Michael E. Boatright ("Appellant") appeals from an amended judgment of the Probate Division of the Circuit Court of Newton County ("probate court") in favor of Delores Irene Boatright, Personal Representative of the Estate of Robert Charles Boatright, deceased, ("Respondent"), after a discovery of assets proceedings. See § 473.340.[1] In its amended judgment, the probate division found that Appellant had willfully and wantonly converted proceeds from the sale of certain real estate previously jointly held by the decedent and his ex-wife, and granted Respondent an award of $56,288.50.[2] Appellant raises four points of probate court error, discussed below. We affirm.

The record shows that Robert Charles Boatright ("Robert") died intestate on October 1, 1999. Appellant was the brother of Robert. Prior to his death, Robert, together with his ex-wife, on August 26, 1999, entered into a contract for the sale of their residence on Kenser Road, Joplin, Missouri. They each held an interest in the real estate after the dissolution of their marriage. The closing date for the Kenser Road property was set for September 20, 1999.

On September 7, 1999, Delores Irene Boatright and Robert married.[3] Thereafter, it became necessary for Robert to travel to Mayo Clinic in Rochester, Minnesota for medical treatment. Because of Robert's illness, Delores accompanied him. They were scheduled to be at Mayo Clinic on September 20, 1999, the same day as the closing on the real estate contract previously mentioned.

In order to facilitate the closing of the real estate contract, Robert and Delores executed a "Special Power of Attorney," appointing Appellant as their "true and lawful attorney" and authorizing Appellant to "do all acts and things in connection with the acquisition, management, sale and/or encumbrance" of the real property in question. Appellant appeared at the closing and signed various documents on behalf of Robert and Delores.

The record further shows that at closing Appellant received a check for $66,288.50, constituting Robert's share of the proceeds from the sale of the property in question. The check was made out jointly to Robert and his new wife, Delores. At this time, Robert had returned from Minnesota and was hospitalized at St. John's Hospital in Joplin, Missouri. Appellant appeared at the hospital and requested that Delores endorse the check, which she did. The record is devoid of a showing that Robert endorsed the check.[4] Appellant then de-

1. All statutory references are to RSMo 2000; all Rule references are to Missouri Court Rules (2002).

2. The record reflects that Respondent had originally filed a "Petition for Discovery of Assets" on December 13, 1999, naming Appellant, Michael Boatright, as the responding party. The action requested a return of possession of the funds received from the sale of real estate, together with certain items of personal property in Appellant's possession, including tools and equipment. It should be

noted that Appellant makes no objection in this appeal relating to the probate court's amended judgment requiring Appellant to return certain tools and equipment.

3. For the sake of clarity, we refer to decedent as Robert, and his wife as Delores. We mean no disrespect.

4. Delores later testified during a discovery of assets hearing that she had spoken "with [Appellant] about putting [the proceeds] in [Robert's] account at Mercantile at that time."

posited the money in Robert's account at Mercantile Bank, the same being Account # 603600920–4, on September 21, 1999. Later, it was discovered that this particular account also contained the name of "Michael Boatright," i.e., Appellant, together with "Robert C. Boatright," i.e., Robert. As best we discern from the record, Appellant had never previously made any deposits or withdrawals from this particular account. Appellant acknowledged during the hearing that both Robert and himself had "signed signature cards." However, none were produced at trial.

The record also reveals that on September 24, 1999, Appellant withdrew $65,000.00 from Mercantile Account 603600920–4 and deposited this sum into Appellant's separate Mercantile Account 602003859–9, in Appellant's sole name and, according to Appellant's testimony, "gave Delores $10,000.00 to pay Bob's bills." [5] Appellant testified that he had withdrawn the $65,000.00 "[t]o keep the money safe," and that he later gave Robert's son, Scott Boatright, the sum of $54,000.00 "because that's what Bob told me to do with it." Despite the foregoing, Appellant also relat-ed that the proceeds from the sale of the real estate were his exclusively.[6]

" 'The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.' " *Ryan v. Spiegelhalter*, 64 S.W.3d 302, 305 (Mo. banc 2002) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

Although Appellant's first point but marginally complies with the requirements of Rule 84.04(d), there is no precedential value in setting it out. We are able to discern that Appellant seeks to challenge the jurisdiction of the probate division of the circuit court to hear this action. We review the point gratuitously. Rule 84.13(c). In this endeavor we are aided by our review of the argument portion of Appellant's first point.

Appellant argues that what Respondent truly sought was a money judgment for breach of a fiduciary duty, notwithstanding the "clear case law that holds that V.A.M.S., 473.340 is *not* designed to test

She also related that Appellant had never had an interest in the Kenser Road property.

**5.** Respondent made no complaint about this transfer.

**6.** The record reveals that the actual amount conveyed to Scott Boatright by Appellant from Mercantile Account 602003859–9 was $54,284.63 on April 14, 2000. Also on March 1, 2001, Appellant wrote a check in the amount of $3,619.56 to his attorney from this same account.

After the reception of this evidence, Respondent's attorney moved to amend Respondent's pleadings "to have a judgment against [Appellant] for the amount of those funds that he's converted." Later, at the conclusion of the reception of evidence, Respondent's attorney again reiterated his request to amend his pleadings to reflect a claim against Appellant for conversion and breach of his fiduciary duty in conformance with the evidence. The Court advised that "you should do it in writing." Subsequently, on May 2, 2001, Respondent's attorney filed an "Amended Petition for Discovery of Assets" wherein it was set out that Appellant held "funds from the sale of the deceased's residence in trust" and that Appellant had "converted said personal property to his own use," and requested judgment against Appellant for the conversion of the property in question. The amount of the monetary award to Respondent, as reflected by the amended judgment is $56,288.50. This is calculated as follows: $66,288.50 (the share of Robert's proceeds from the sale of his share of the real estate) minus $10,000.00 (the amount transferred by Appellant to Respondent to pay Robert's final expenses) = $56,288.50.

general fiduciary conduct." However, from our review of the pleadings, it is clear that Respondent's petition for discovery of assets was a search for assets owned by the decedent at the time of his death. *Estate of Mitchell*, 610 S.W.2d 681, 684 (Mo.App.1980). While Appellant's fiduciary conduct was necessarily implicated, it was not the primary thrust of either the original or amended petitions for discovery of assets. Indeed, Respondent sought redress from Appellant pursuant to § 473.340, for having converted the specific proceeds from the sale of the real estate in question and not damages for violation of Respondent's fiduciary obligations, per se.

■ "The probate division of the circuit court has original and exclusive jurisdiction over a proceeding to discover assets pursuant to section 473.340."[7] *Ryan*, 64 S.W.3d at 305; *Estate of Williams*, 12 S.W.3d 302, 305 (Mo. banc 2000). "In a discovery of assets proceeding, the court's role is to determine whether specific property has been adversely withheld or claimed." *Ryan*, 64 S.W.3d at 305; *see Estate of Williams*, 12 S.W.3d at 305. " 'The statute is not intended as a device to test general fiduciary conduct, improper administration of the estate, or general disputes among heirs.' " *Ryan*, 64 S.W.3d at 305 (quoting *Estate of Goldenberg*, 601 S.W.2d 637, 639 (Mo.App.1980)). " 'A discovery of assets action, as its name implies, is a search for assets.' " *Id.* (quoting *State ex rel. Knight v. Harman*, 961 S.W.2d 951, 954 (Mo.App.1998)).

■ "Modern amendments to the probate code, however, have expanded the jurisdiction of the probate division so that today a discovery of assets proceeding extends to all species of property, including real estate." *Ryan*, 64 S.W.3d at 306; *see Estate of Goslee*, 807 S.W.2d 552, 554 (Mo. App.1991). "Moreover, the probate division in such a proceeding is now afforded inherent power of the circuit court to adjust equities between the parties without rigid adherence to any form and may shape the remedy to meet the demands of justice." *Ryan*, 64 S.W.3d at 306; *Estate of Cantonia*, 684 S.W.2d 592, 595 (Mo.App.

7. Section 473.340 provides in pertinent part, as follows:

1. Any personal representative, administrator, creditor, beneficiary or other person who claims an interest in property which is claimed to be an asset of an estate or which is claimed should be an asset of an estate may file a verified petition in the probate division of the circuit court in which said estate is pending seeking determination of the title, or right of possession thereto, or both. The petition shall describe the property, if known, shall allege the nature of the interest of the petitioner and that title or possession of the property, or both, are being adversely withheld or claimed. The court may order the joinder, as a party, of any person who may claim an interest in or who may have possession of any such property.
. . .
3. Upon a trial of the issues, the court shall determine the persons who have an interest in said property together with the nature and extent of any such interest. The court shall direct the delivery or transfer of the title or possession, or both, of said property to the person or persons entitled thereto and may attach the person of any party refusing to make delivery as directed. If the party found to have adversely withheld the title or possession, or both, of said property has transferred or otherwise disposed of the same, the court shall render a money judgment for the value thereof with interest thereon from the date the property, or any interest therein, was adversely withheld. In addition to a judgment for title and possession, or either, or for the value thereof, the court may enter a judgment for all losses, expenses and damages sustained, if any, but not including attorney fees, if it finds that the property was wrongfully detained, transferred or otherwise disposed of.
473.340.1 and 473.340.3.

1985); *see also* § 472.030. "By virtue of its equitable jurisdiction, the probate division is not limited to questions of legal title, but it may determine both legal and equitable claims of an estate to title in an asset." *Ryan,* 64 S.W.3d at 306.

■ "A proceeding under section 473.340 is similar to common law actions of trover or conversion." *Ryan,* 64 S.W.3d at 305–06; *see Knight,* 961 S.W.2d at 954. Being mindful of the wide-ranging powers now granted the probate court to consider matters both legal and equitable, *see Estate of Goslee,* 807 S.W.2d at 554, combined with the fact that "'the strict rules of pleadings in circuit court petitions do not apply to probate proceedings,'" *Ryan,* 64 S.W.3d at 308 (quoting *Estate of Miller,* 9 S.W.3d 760, 765 (Mo.App.2000)), we now consider whether the facts of the case set out a cognizable claim for conversion. To do so, it is efficacious that we review some of the axioms of the law relating to an action for conversion.

■ As a general rule "conversion is 'any distinct act of dominion wrongfully exerted over one's property, in denial of his right or inconsistent with it.'" *Reason v. Payne,* 793 S.W.2d 471, 474 (Mo.App. 1990) (quoting *Kansas City Cas. Co. v. Westport Avenue Bank,* 191 Mo.App. 287, 177 S.W. 1092, 1093–94 (1915)); *see Walker v. Hanke,* 992 S.W.2d 925, 930 (Mo.App. 1999). It may be proved in three ways: "'(1) by tortious taking; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner, or (3) by a refusal to give up possession to the owner on demand.'" *Reason,* 793 S.W.2d at 474 (quoting *Arnold v. Prange,* 541 S.W.2d 27, 30 (Mo.App.1976)).

■ Money represented by a general or ordinary debt is not subject to a claim for conversion. *See Reason,* 793 S.W.2d at 474; *see Breece v. Jett,* 556 S.W.2d 696, 709 (Mo.App.1977). "As a general rule a claim for money may not be in conversion because conversion lies only for a specific chattel which has been wrongfully converted." *Dayton Const., Inc. v. Meinhardt,* 882 S.W.2d 206, 208 (Mo. App.1994). This includes withdrawal of money from a joint bank account. *See id.*

■ Nevertheless, money can be an appropriate subject of conversion "when it can be described or identified as a specific chattel." *Breece,* 556 S.W.2d at 710. Thus, an action for conversion may lie to claim a deposit of monies previously made preliminary to the purchase of a vehicle. *Coleman v. Pioneer Studebaker, Inc.,* 403 S.W.2d 948, 951–52 (Mo.App.1966). Also, misappropriated funds placed in the custody of another for a definite purpose may be subject to a suit for conversion. *Reason,* 793 S.W.2d at 474; *see Boyd v. Wimes,* 664 S.W.2d 596, 599 (Mo.App. 1984); *see also Hall v. W.L. Brady Investments, Inc.,* 684 S.W.2d 379, 384 (Mo.App. 1984).

In *Walker v. Hanke, supra,* Mr. Walker moved into the household of his daughter and her husband and subsequently granted his daughter a power of attorney to handle his business affairs. Mr. Walker was later involved in an automobile accident and received a significant settlement due to his injuries. At his daughter's and her husband's insistence Mr. Walker allowed his daughter and her husband, an insurance businessman, to purchase two $90,000.00 annuities from the settlement monies. Unbeknownst to Mr. Walker, these annuities were not placed in his name but rather in the name of his daughter. *Walker,* 992 S.W.2d at 928–29. Despite Mr. Walker's later request that his daughter and her husband cash in the annuities, his daughter refused to comply with his wishes. In due course Mr. Walk-

er revoked his power of attorney, changed his will and moved out of daughter and husband's house. After the falling out, daughter and her husband did in fact cash in the annuities and spent the bulk of the funds for daughter's and husband's own needs and recreation. *Id.* at 929.

The trial court made a determination that, contrary to daughter and husband's assertions, Mr. Walker had not gifted them the annuities and awarded Mr. Walker $180,000.00 in actual damages and punitive damages in the amount of $25,000.00. *Id.* at 930–31; 936–37.

In affirming the trial court's judgment the Western District of this Court observed that the trial court was "required to resolve credibility issues between two conflicting stories offered by the parties," *id.* at 931, and found the testimony of Mr. Walker more credible than that of his daughter when he said that he had not gifted the annuities to his daughter. The Court also noted that "[c]onversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights," *Id.* at 930 (quoting *Dayton Const.,* 882 S.W.2d at 208), and postulated that conversion may be proved by a tortious taking, any use or appropriation in opposition to the owner's rights, or by *"refusal to give up possession to the owner on demand."* *Walker,* 992 S.W.2d at 930 (emphasis added). Accordingly, since the annuities belonged to Mr. Walker and he had demanded them back, an action for conversion would lie because his daughter and her husband had refused *"to give up possession to the owner on demand."* *Id.* (emphasis added).

■ Here, the facts support Respondent's action for discovery of assets sounding in conversion. As previously related, Respondent did not seek damages against Appellant for violation of Appellant's fiduciary duties. Rather, Respondent identified a specific chattel, i.e., the sum of $66,288.50, which constituted the proceeds received from the sale of Robert's property that belonged to Robert at the time of his death. Respondent made a demand for this specific amount of money, but, as the record reveals, these sums were withheld by Appellant. *See Walker,* 992 S.W.2d at 931–32. The probate division had jurisdiction. *Ryan,* 64 S.W.3d at 305. Point denied.

Appellant's Point Two reads as follows:

The court erred in granting judgment in favor of Delores Boatright, personal representative of the estate, as the personal representative lacks legal standing to prosecute a discovery of assets proceeding challenging an inter vivos transfer by decedent particularly where no election has been made pursuant to V.A.M.S. 474.150 in the probate proceeding.

In the argument portion of his brief, Appellant elaborates: "[t]he issue in this section of the brief is whether the Respondent has authority, as Personal Representative, to maintain, in the Personal Representative's name and capacity, a proceeding to establish that Decedent transferred property inter vivos in fraud of the marital rights of the Personal Representative."

■ Giving the most charitable interpretation to the foregoing, as best we discern, Appellant appears to contend that the probate division erred in granting judgment in favor of Respondent because in essence what Respondent had done was to use the mechanism of a discovery of assets proceeding to set aside a transfer in fraud of the marital rights of Delores, the surviving spouse, and only Delores, in her own individual capacity pursuant to

**508**

§ 474.150, would be authorized to bring such an action.[8]

This appears to be a non-issue. It is clear from our review of both the original and amended petitions for discovery of assets that the personal representative never sought to set aside any transfer on the basis that it was in fraud of the marital rights of the surviving spouse. Neither is there a reference in the amended judgment that the specific funds generated by the sale of the Kenser Road property were being set aside as being in fraud of the marital rights of the surviving spouse. Point denied.

In his third point, Appellant maintains that the court erred in permitting Respondent to amend her petition to incorporate a claim of conversion in her discovery of assets action, as it is "not viable as a matter of law and the judgment erroneously declared and misapplied the law." This point lacks merit and is largely disposed of by our discussion of Point One.

▆ The probate court was within its discretion in permitting Respondent to amend her petition to conform to the evidence. Pursuant to the discovery of assets statute, § 473.340.2, the probate court had authorized the proceedings to be governed by the Missouri Rules of Civil Procedure. Rule 55.33(b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings...." Rule 55.33(b); *Gaffney v. Cmty. Fed. Sav. and Loan Ass'n*, 706 S.W.2d 530, 533 (Mo. App.1986). The express issue of Appellant's conversion had not been specifically

pleaded previously. Appellant posed no immediate objection to the evidence relating to his purported conversion. *See RPM Plumbing Mechanical, Inc. v. Jim Plunkett, Inc.*, 46 S.W.3d 60, 62–63 (Mo.App. 2001); *Murray v. Ray*, 862 S.W.2d 931, 934 (Mo.App.1993). The probate court did not abuse its discretion in permitting the amendment of the original petition for discovery of assets to conform to the evidence. Point denied.

In our review of Appellant's fourth point, we observe that it suffers from similar procedural maladies as did his first point. We need not specifically recite the point. Boiled down to its essentials, we discern from the argument portion of the point that Appellant contends that the probate court erred "as a matter of law in finding that Appellant had, in essence, converted his own funds." In support he quotes *Estate of LaGarce*, 487 S.W.2d 493 (Mo. banc 1972) for the proposition that "funds on deposit in a joint account shall be paid to one or more of the joint tenants or the survivor," and asserts that no evidence was presented at the hearing overcoming the presumption that Appellant was a joint owner of the funds in the "Mercantile account." This point lacks merit.

We view the evidence in the light most favorable to the judgment, as we must, as no findings of facts and conclusions of law were requested. *See Miller v. Miller*, 872 S.W.2d 654, 657 (Mo.App.1994); Rule 73.01(c). As previously set out, the trier of fact has broad discretion to determine the credibility of witnesses. *Collins v. Trammell*, 911 S.W.2d 635, 638 (Mo.App.1995);

**8.** Section 474.150.1, the pertinent provision of § 474.150, reads as follows:

Any gift made by a person, whether dying testate or intestate, in fraud of the marital rights of his surviving spouse to share in his estate, shall, at the election of the surviving spouse, be treated as a testamentary disposition and may be recovered from the donee and persons taking from him without adequate consideration and applied to the payment of the spouse's share, as in case of his election to take against the will.

*see Walker,* 992 S.W.2d at 931; *see also Miller,* 872 S.W.2d at 657.

 Further, a "discovery of assets action, as its name implies, is a search for assets owned by the decedent at his death, and, thus, traditionally in these actions, the ultimate issue is whether title to the assets in question had passed from the decedent to another person prior to the former's death." *Estate of Mitchell,* 610 S.W.2d at 684. "Implicit in the traditional procedure is a denial that there was an effective transfer of title from the decedent to another party." *Id.* "The issue of title is framed by the petitioner simply alleging that the decedent held title at his death to certain described property and that this property is being adversely withheld by another person." *Id.; see* § 473.340.

 "[O]nce the initiating petitioner makes a prima facie showing that the decedent owned the property in question at his death, the burden of going forward and the burden of proof shifts to the respondent to show there was an effective transfer of the property from decedent to him." *Id.*

Here, Respondent filed an amended petition for discovery of assets which, in pertinent part, set out that the specific proceeds from the sale of the property in question belonged to Robert at his death. The check for $66,288.50, representing the proceeds from Robert's share of the sale of the Kenser Road property, was made payable to Robert and his present wife, Delores. Testimony revealed that the entire-

ty of the proceeds belonged to Robert at that given time. Since Appellant refused to turn over these funds, less the $10,000.00 previously transferred, Respondent made a prima facie showing that Appellant had converted the funds. *See Walker,* 992 S.W.2d at 930. It then became incumbent on Appellant to refute the proposition that the funds belonged to Robert at the time of his death. *See Estate of Mitchell,* 610 S.W.2d at 684.

In our review, we are mindful that the primary issue in this proceeding was not whether Appellant exceeded his authority in using the power of attorney granted him by Robert and Delores. The issue was whether Appellant converted to his own purposes the proceeds from the sale of the property in question. *See Estate of Stickler,* 551 S.W.2d 944, 951 (Mo.App.1977).

 While Appellant was authorized by the special power of attorney granted him by Robert and Delores to "do all acts and things in connection with the acquisition, management, sale and/or encumbrance" of the Kenser Road real estate, absent from the power of attorney was any *express clause* that permitted Appellant to make a gift of the proceeds from the sale of the property, as required by section 404.710.6(3). *Arambula v. Atwell,* 948 S.W.2d 173, 177 (Mo.App.1997); *see Miller,* 872 S.W.2d at 659. "[G]ift[s] by an attorney in fact to himself or a third party is barred absent a clear intent to the contrary evidenced in writing." *Williams v. Walls,* 964 S.W.2d 839, 847–48 (Mo.App. 1998).[9] Accordingly, Appellant was not

---

9. §§ 404.710 directs that:
6. Any power of attorney, whether durable or not durable, and whether or not it grants general powers for all subjects and purposes or with respect to express subjects or purposes ... may grant power of authority to an attorney in fact to carry out any of the following *if the actions are expressly authorized in the power of attorney:*

. . .
(3) To make or revoke a gift of the principal's property in trust or otherwise.
. . .
(5) To create or change survivorship interests in the principal's property. . . .
§ 404.710.6(3) and (5) (emphasis added).

authorized to transfer the proceeds from the sale of the real estate into any account, particularly his own. *See id.; see also* § 404.714.6.[10]

We also observe that there was support in the record for the proposition that Appellant implicitly admitted that the funds in question were not his but belonged to Robert at the time of his death. This is evidenced by Appellant testifying at the discovery of assets hearing that he transferred the proceeds from the sale of the property in question to his separate account to "keep the money safe," and that he later gave Robert's son, Scott Boatright, the sum of approximately $54,-000.000 "[b]ecause that's what [Robert] told me to do with it."

We can reasonably infer that the probate court, in the exercise of its right to determine the credibility of a witness, did not believe Appellant's testimony when Appellant related that he had been instructed by Robert to take control of the specific proceeds of the sale of the property by either first placing the proceeds in the account established by Robert; or, secondly, by transferring the funds to Appellant's own and individual account; or thirdly, by transferring the funds to Robert's son, Scott Boatright.[11] We can also infer that the probate court rejected any testimony lending support to the proposi-

tion that Robert, during his life time, gifted the funds in question to Appellant.[12] *See Walker,* 992 S.W.2d at 931; *see also Miller,* 872 S.W.2d at 657.

Appellant's refusal to turn over the funds upon Respondent's demand in her capacity as personal representative of decedent's estate, satisfied the third prong of proof of an action for conversion, i.e., Appellant " 'refuse[d] to give up possession to the owner on demand, even though the defendant's original possession of the property was proper.' " *Walker,* 992 S.W.2d at 930 (quoting *Collins,* 911 S.W.2d at 637–38).

Pursuant to the authority granted the probate division by statute, and in particular, section 473.340.3, the probate division had the authority in an action for discovery of assets to "determine the persons who have an interest in said property together with the nature and extent of any such interest." § 473.340.3; *Estate of Woodrum,* 859 S.W.2d 259, 262 (Mo.App. 1993). The probate division determined that Respondent, in her capacity as personal representative, was entitled to the specific and identifiable proceeds from the sale of the property in question belonging to Robert at his death. Since the funds in question had been transferred or otherwise disposed of by Appellant, the probate division appropriately rendered a money

---

**10.** § 404.714.6 states as follows:

> The authority of an attorney in fact, under a power of attorney that is not durable, is suspended during any period that the principal is disabled or incapacitated to the extent that the principal is unable to receive or evaluate information or to communicate decisions with respect to the subject of the power of attorney; and an attorney in fact exercising authority under a power of attorney that is not durable shall not act in the principal's behalf during any period that the attorney in fact knows the principal is so disabled or incapacitated.

**11.** We lay aside the question of the testamentary nature of the purported arrangement to which Appellant testified.

**12.** "[W]here a gift is not asserted until after a donor's death, it is viewed with some suspicion, and the requirement of clear and convincing proof to establish it is particularly applicable." *Estate of Petersen,* 295 S.W.2d 144, 150 (Mo.1956). Here, since the burden of proof was on Appellant to establish a gift of the proceeds, if the probate court chose to disbelieve his evidence, it was not necessary that there be affirmative evidence to support the finding. *Id.* at 151.

judgment for the value thereof in the amount of $56,288.50. *See* § 473.340.3. Point denied.

All pending motions are denied. There was substantial evidence in the record supporting the probate division's amended judgment. The amended judgment of the probate division is affirmed.

MONTGOMERY, P.J., and GARRISON, J., concur.