Landell **CARTER** and Darrell Carter, Respondents,

v.

Lance **WHITE** and Noranda Aluminum, Inc., Appellants.

No. 28230.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 9, 2007.

Motion for Rehearing or Transfer Denied Dec. 4, 2007.

Application for Transfer Denied Jan. 22, 2008.

Lawrence H. Rost, New Madrid, for Appellants.

Daren K. Todd & Cameron Bunting Parker, Welch, Todd & Parker, Malden, for Respondents.

Before BARNEY, P.J., RAHMEYER, J., and McGHEE, SR. J.

PER CURIAM.

Appellants Lance White ("Officer White") and Noranda Aluminum, Inc. ("Noranda") (collectively "Appellants") appeal the trial court's judgment following a jury trial in favor of Respondents Landell Carter ("Landell") and Darrell Carter ("Darrell") (collectively "Respondents") on their petition for conversion,[1] interference with a business relationship, and trespass.[2] The jury awarded each Respondent actual damages of $200.00 as against both Appellants; denied an award of punitive damages against Officer White; and awarded each Respondent punitive damages in the amount of $25,000.00 only against Noranda. Appellants now assert three points of trial court error, discussed below.

The record reveals that in 1999, the Southeast Missouri ("SEMO") Drug Task Force began several undercover investigations at private companies to help those companies uncover illegal drug activity and other internal issues. At that time, the SEMO task force worked with several executives at Noranda to place two undercover, commissioned officers, Officer White and Officer Darren Bullard ("Officer Bullard"), at Noranda as paid employees.[3] During the investigation, the undercover officers "worked as workers" at Noranda and did not report their findings to Noranda while the investigation was pending; instead, the officers filed reports directly with the SEMO Drug Task Force. The undercover officers were paid by Noranda during the undercover investigation and did not receive wages from the drug task

---

1. In their petition, Respondents asserted Officer White and Noranda converted the following property:

   three rolls of duct tape; three rolls of emery cloth; one Ideal mechanic wire on a spool; one machine tool wire (black); one machine tool wire (white); one bundle or spool of wire; three horseshoe shaped chain hitch with pins; one Ideal mechanic wire on a spool; one safety belt with lanyard; one can electrical grade 2–26 seal it by CRC....

   We mean no disrespect in referring to Respondents by their first names.

2. We note the count in Respondents' petition relating to interference with a business relationship was dismissed by the trial court prior to trial. Likewise, the trespass claim was dismissed prior to trial by agreement of the parties.

3. The record reveals that Allen Foust ("Mr. Foust") originally approached the coordinator of the SEMO Drug Task Force about placing two under cover investigators at Noranda for this purpose. The investigators underwent law enforcement training and were commissioned "through Mississippi County and then brought under ... the Task Force...." The record is not clear about the exact relationship between Mr. Foust, Noranda and/or Officers White and Bullard.

   Also, as best we discern from the record Respondents did not bring suit against Officer Bullard.

force or any other law enforcement agency during that time. Officer White testified at trial that he "answered to the SEMO Drug Task Force. [He] didn't have any contact with any personnel at Noranda ..." other than with his direct work supervisors who did not know about his undercover status. Officer Bullard testified the undercover officers "were ... under the direct control and supervision of the SEMO Drug Task Force" throughout the investigation.

The undercover investigation at Noranda lasted approximately eighteen months and at the close of the investigation the SEMO task force performed a series of searches at the homes of several suspects, including Respondents.

On January 29, 1999, Officer White and Officer Bullard, accompanied by a Missouri Highway Patrol officer,[4] performed consensual searches at the homes of both Respondents, who were Noranda employees.

Officer White testified that Landell's home was searched because Officer White had received information that Landell along with Darrell and other Noranda employees had broken into a trailer and stolen several items. Officer White further testified that he had personal knowledge that Landell as well as Darrell "carried out items [belonging to Noranda] in their tool boxes or their lunch boxes."

Officer White testified that on the morning of January 29, 1999, he and the other officers received written consent to search Landell's home from his mother-in-law and that Landell was not at home at the time of the search. He stated the officers gathered numerous items which they believed to be stolen property; made a list of the

items seized; "labeled [the items] as evidence and put it in the SEMO Drug Task Force Evidence Locker." Officer White stated he "put evidence tape on [the items] ... put a property record on it, sealed it as evidence...." Officer Bullard also testified that the seized property was "gathered up and taken to a [SEMO Drug Task Force] locker ..." following the search.

Later on the morning of January 29, 1999, the officers went to Darrell's home. Darrell was home at the time and gave the officers written consent to search his home. The officers seized approximately ten items which they believed belonged to Noranda from a shed on Darrell's property and from his vehicle. The officers collected the items by following "evidence procedures" and Officer White made a list of the items for his police report when they returned to the police station. Officer White testified the items were "packaged, evidence tape across them, property records attached, placed in the SEMO Drug Task Force Evidence Locker."

At trial, Landell testified that at an ensuing arbitration hearing he had asked a Noranda representative for the return of the items seized from his home but was told he could not have the items back. Landell admitted he lost his job with Noranda because the arbitrator found he had stolen property from Noranda. Darrell testified at trial that he never asked anyone to return the seized items to him. Darrell admitted he was fired from Noranda because they found he was smoking marijuana while at work as well as for stealing from Noranda.

Officer White testified that on February 4, 1999, he removed the property seized

---

4. Corporal J.L. McCullough ("Corporal McCullough"), an officer with the Missouri State Highway Patrol, testified that he accompanied Officer White and Officer Bullard to

Respondents' homes on January 29, 1999, to conduct a search for stolen items as well as drugs.

from Respondents' homes from the SEMO Drug Task Force evidence locker and took it to the Sikeston Highway Patrol office for it to be identified by Noranda employees. The Noranda employees indicated the items "were used commonly at Noranda" and were "typical Noranda items." In his police report, which was entered into evidence at trial, Office White noted that the Noranda employees noted that many of the items definitely "came through the warehouse" at Noranda and that many of the items were obviously for industrial use only.

Officer White testified that Noranda was in no way involved in the seizure of items from Respondents' homes and he was not "ordered to go there by them." He stated that the items seized were taken on behalf of a criminal investigation being performed by the SEMO Drug Task Force. Officer White also testified that he was then working for the Mineral Area Drug Task Force and he did not know the current location of the items seized from Respondents' homes. He stated the last time he saw the items was at the arbitration hearing conducted in relation to Respondents' discharges from Noranda.

Officer Bullard testified that Noranda was not involved in the seizure of items from Respondents' homes and that at all times he and Officer White were operating a criminal investigation as police officers. He stated they took possession of the items "on behalf of the SEMO Drug Task Force."

Sergeant Kevin Glaser ("Sergeant Glaser"), an officer with the Missouri Highway Patrol and the Coordinator of the SEMO Drug Task Force, testified that Officer White and Officer Bullard were working undercover for the task force while they were employed at Noranda. He stated they filed reports with the task force and

sent drug samples and other evidence to the task force to be tested.

Rick Eisenbach, the superintendent of employee relations and security for Noranda, testified that Landell was discharged from Noranda for "steal[ing] or attempt[ing] to steal [Noranda] property. . . ." He stated Darrell was discharged for the same reason as well as "for smoking marijuana on [Noranda] property, actually at work." Mr. Eisenbach related that under the terms of the collective bargaining agreement with the Union both Respondents had an opportunity to appeal their suspension and termination through "a grievance procedure." He also stated that following the arbitration hearings it was determined that Darrell and Landell were properly discharged from Noranda for violating the company's rules of conduct. Also, regarding the searches at Respondents' homes, Mr. Eisenbach testified that Noranda was in no way involved in the searches which were carried out by officers of the SEMO Drug Task Force. He stated there were no Noranda employees present at Respondents' homes during the searches. He also related that the items seized from the homes were "used in . . . the [a]rbitration case . . ." and were brought from the Missouri Highway Patrol storage locker to the arbitration by Corporal Cone. He stated the items were in the possession of the Missouri Highway Patrol and had always been "in the storage locker at the evidence locker at the [Missouri Highway Patrol] Zone Office in Sikeston." Mr. Eisenbach testified he had no right to return the seized property to Respondents because he did not "have the right to. It's not . . . our property. It's in the SEMO Drug Task Force Locker." Mr. Eisenbach also stated that at the time of the raid on Respondents' homes, Officers White and Bullard were no longer employed by Noranda. He related that their employment

with Noranda was terminated "prior to the raid."

Appellants raise three points of trial court error. For ease of analysis we have chosen to address Appellants' points out of order. We commence with our analysis of Point Two. In this point of trial court error, Appellants maintain the trial court erred in denying their Motion for New Trial "because the verdict is against the evidence in that there was no proof of a conversion...." Specifically Appellants maintain "there was no evidence showing that Appellants had possession of the property listed in the Petition ...;" accordingly, there was no tortious taking.

We recognize, of course, that the standard of review for the denial of a motion for new trial is abuse of discretion by the trial court. *M.E.S. v. Daughters of Charity Servs.*, 975 S.W.2d 477, 482 (Mo.App. 1998). Accordingly, we will not reverse "unless there is a substantial or glaring injustice." *Fierstein v. DePaul Health Ctr.*, 24 S.W.3d 220, 225 (Mo.App.2000). Moreover, if " 'reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' " *Kehr v. Knapp*, 136 S.W.3d 118, 123 (Mo. App.2004) (quoting *Sherar v. Zipper*, 98 S.W.3d 628, 632 (Mo.App.2003)).

■■ In our review of Appellants' second point relied on, we note that aside from a single unsupported, conclusory remark that there was no proof of use or appropriation by Officer White of property belonging to Darrell, Appellants' argument centers around the lack of proof that Noranda either had possession of or converted the properties in question. "Arguments raised in the points relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." *Luft v. Schoenhoff*, 935 S.W.2d 685, 687 (Mo.App.1996). "An appellant must develop the contention raised in the point relied on in the argument section of the brief." *Id.* Accordingly, we address only that portion of Appellants' argument which relates to Noranda.

■■ "As a general rule 'conversion is any distinct act of dominion wrongfully exerted over one's property, in denial of his right or inconsistent with it.' " *In re Estate of Boatright*, 88 S.W.3d 500, 506 (Mo.App.2002) (quoting *Reason v. Payne*, 793 S.W.2d 471, 474 (Mo.App.1990)). "Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Kennedy v. Fournie*, 898 S.W.2d 672, 678 (Mo.App. 1995). Conversion is a tort against the right of possession rather than against the right of title. *Auto Alarm Supply Corp. v. Lou Fusz Motor Co.*, 986 S.W.2d 467, 468 (Mo.App.1998).

■■ Conversion may be proven in one of three ways: " '(1) by tortious taking; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner, or (3) by a refusal to give up possession to the owner on demand.' " *Estate of Boatright*, 88 S.W.3d at 506 (quoting *Reason*, 793 S.W.2d at 474); *see also Simul Vision Cable Systems P'ship v. Continental Cablevision of St. Louis County, Inc.*, 983 S.W.2d 600, 603 (Mo.App.1999). Under any of the three aforementioned theories, the plaintiff must show he had title to, or a right of property in, and a right to the immediate possession of the property concerned at the alleged date of conversion. *Mertz v. Blockbuster, Inc.*, 32 S.W.3d 130, 133 (Mo.App.2000); *see Jackson v. Premier Service Corp.*, 761 S.W.2d 648, 650 (Mo.App.1988). "It is possible to infer intent to convert from the facts and

circumstances of the situation." *Mertz*, 32 S.W.3d at 133.

■ Based on review of the foregoing authorities and our review of the record, this Court determines there was insufficient probative evidence supporting the jury's determination that Noranda converted the property listed in Respondents' petition.

The record is replete with evidence that at the time of the raid on Respondents' homes Officers White and Bullard were no longer employed by Noranda. Mr. Eisenbach testified that both Officer White and Officer Bullard had terminated their employment with Noranda prior to the raids specifically to help protect the undercover police operation. Officer White testified that the fifteen month undercover investigation ended on December 17, 1998, and he was no longer employed by Noranda after that time. Additionally, the record is devoid of a showing that either Officers White or Bullard were in the employ of any other, independent investigating entity that may have had a contract with Noranda. Furthermore, the record reveals that at the time of the searches Officer White was operating as a commissioned undercover police officer on behalf of the SEMO Drug Task Force and not as an employee of Noranda. There were no agents or representatives of Noranda at Respondents' homes at the time of the seizures.

Likewise, there is no evidence that Noranda had possession of the property listed in Respondents' petition such that they appropriated the items in contravention of Respondents' rights. *Estate of Boatright*, 88 S.W.3d at 506. Officer White as well as the other police officers repeatedly stated that the items taken from Respondents'

homes were gathered using police procedures; were affixed with police evidence tape; catalogued; and then housed in the evidence locker of the Missouri Highway Patrol. Officer White stated he assumed the items were probably still in the possession of the Missouri Highway Patrol at the time of trial. Mr. Eisenbach testified that at the arbitration hearing relating to Respondents' discharges from Noranda, Corporal Cone of the Missouri Highway Patrol brought the seized items to the hearing from the evidence locker and then returned them to the evidence locker following the hearing. He stated that Noranda was never in possession of those items and they had always been in the custody of the Missouri Highway Patrol. In the present matter, there is no probative evidence showing that Noranda wrongfully converted property belonging to Respondents. There was insufficient evidence supporting the trial court's determination to award actual damages against Noranda as a result of its converting any of Respondents' respective properties. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Point Two has merit.

■ Next, we take up Appellant's third point of trial court error. Appellants assert the trial court erred in denying their Motion for New Trial and Motion for Remittitur because the jury's award of punitive damages against Noranda in the amount of $25,000.00 for each Respondent was "grossly excessive and so out of proportion to the factors involved, constituting an abuse of discretion on the part of the jury."[5] However, since the award of actual damages against Noranda was in error, the award of punitive damages was also in error. It has long been held that there can be no award of punitive damages ab-

---

**5.** As already stated, in its verdict the jury assessed no punitive damages against Officer White.

sent an award of actual damages. *Forbes v. Forbes*, 987 S.W.2d 468, 469 (Mo.App. 1999); *Environmental Energy Partners, Inc. v. Siemens Bldg. Technologies, Inc.*, 178 S.W.3d 691, 713 (Mo.App.2005). Point Three has merit.

■ Lastly, in their first point on appeal, Appellants maintain the trial court erred in denying their Motion for Directed Verdict because "the evidence failed to establish proof of a conversion in that no evidence was offered that the property stated in the Petition was owned by Landell or that he had a right to immediate possession at the time of the alleged conversion." [6]

The appellate standard of review for denial of a motion for directed verdict is whether the non-moving party submitted substantial evidence that tended to prove the facts essential to its claim. *Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 801 (Mo. banc 1997). This Court views the evidence "in the light most favorable to the non-moving party, affording the non-moving party all reasonable inferences from the evidence and disregarding the moving party's evidence that contradicts the non-moving party's claims." *Gill Const., Inc. v. 18th & Vine Authority*, 157 S.W.3d 699, 712 (Mo.App.2004). "A jury verdict will be reversed on appeal for insufficient evidence only if there is a 'complete absence of probative facts' to support the verdict." *Id.* (quoting *Seitz v. Lemay Bank & Trust Co.*, 959 S.W.2d 458, 461 (Mo. banc 1998)).

Having already determined there was insubstantial evidence supporting the jury's finding that Noranda converted Respondents' property, we need only address the argument under Appellants' first point relied on as it relates to Officer White. We turn first to Appellants' argument that there was no proof at trial "that the property stated in the Petition was owned by [Landell] or that he had a right to immediate possession at the time of the alleged conversion." In our review, we view the evidence in the light most favorable to the decision, deferring to the trial court's assessment of credibility. *Kinner v. Scott*, 216 S.W.3d 715, 718 (Mo.App.2007). We initially note that Landell testified that certain of the items listed in the petition were taken from a shop located on his property. He also testified the items taken from his property included "items such as emery cloth, duct tape, a safety belt with a lanyard, some spools of electrical wire, things of that nature" as stated in the petition. He testified he used some of the items that were listed in the petition and which were seized from his property to work on his small tractors and other equipment at his home, as well as to "raise crops for wildlife, deer and turkey and stuff like that." He also stated he had previously used a "horseshoe shaped chain hitch with pins," which was listed on the petition, "on [his] farm equipment." Regarding the safety belt with lanyard listed in the petition, he related he had previously worked construction and had owned several safety belts. Further, he testified he often used electrical grade sealant like that listed in the petition to "make ... electrical connections" on items at his home and

---

**6.** We note that within this point relied on Appellants raise the issue that "[a] fortiori, because the property was not owned or possessed by Landell ..., the [t]rial [c]ourt erred in giving the Form Of Verdict instruction...." We do not address this issue in this opinion in that the transcript reveals the parties stipulated to the verdict form in this matter and Appellants raised no objection at trial relating to the verdict form. *See Lindsey Masonry Co., v. Jenkins & Associates, Inc.*, 897 S.W.2d 6, 10 (Mo.App.1995); Rule 70.03, Missouri Court Rules (2007).

Additionally, we note the first point relied on makes no mention of error as relates to Darrell.

in his shop. While there was conflict in the evidence as to the ownership of the properties in question, "[a]s the trier of fact, the resolution of conflicts in evidence is within the jurors' exclusive province." *Bailey v. Cameron Mut. Ins. Co.,* 122 S.W.3d 599, 605 (Mo.App.2003). In the present matter, there was specific testimony that the items listed on the petition belonged to Landell and that those items were taken from his home without his permission. There was sufficient evidence to support the proposition that "the property stated in the Petition was owned by [Landell and] that he had a right to immediate possession at the time of the alleged conversion."

■ We next turn to Appellants' assertion there was no evidence Officer White converted Landell's property. Saliently, we note at the outset that despite the evidence in the record and the repeated assertions by Officer White throughout this matter that he seized the items at issue while working and operating on behalf of the SEMO Drug Task Force as a commissioned law enforcement officer, the record is devoid of a showing that Officer White asserted at trial that he was entitled to any form of immunity because he was a law enforcement officer. Officer White was sued as a private individual and has had judgment rendered against him in his personal capacity.

The undisputed testimony at trial showed that Officer White searched Landell's home; that he took certain items from his home; that he did not have permission to take the items from Landell's home; and that he did not return those items to Landell. Given these circumstances, there has been a sufficient showing by Respondents that Officer White wrongfully exercised dominion and control over Respondents' property in a manner that was inconsistent with Respondents' rights to possess the property in question. *See Estate of Boatright,* 88 S.W.3d at 506; *Kennedy,* 898 S.W.2d at 678. There was sufficient evidence supporting the jury's determination that Officer White converted Landell's property. Appellants' first point is denied.

Accordingly, the awards of actual damages in the amount of $200.00 in favor of each Respondent as against Noranda and the award of $25,000.00 in punitive damages in favor of each Respondent as against Noranda are reversed. The award of actual damages in the amount of $200.00 in favor of each Respondent against Officer White is affirmed. Pursuant to the authority granted this Court under Rule 84.13, Missouri Court Rules (2007), the trial court's judgment is amended to conform to the foregoing determination.